## W. A. SHAFFER ET AL. v. J. J. CORSON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 2, 1891—Decided April 6, 1891.

1. A statement of claim, averring the employment of defendant by plaintiffs to pay off a mortgage debt, that defendant had in his hands sufficient funds of plaintiffs for the purpose but wrongfully neglected to pay the debt, and the damage to plaintiffs therefrom, contains all the essential elements of a declaration for negligence.

2. The evidence being conflicting, and both grounds of defence, the absence of any employment on the part of the defendant, and express direction by the plaintiffs to pay the money to the wrong person, having been submitted, with instruction that if either be found for the defendant he was not liable, the defendant had no just cause of complaint.

3. Records, put in evidence by the defendant, showing efforts on the part of the plaintiffs, in relief of their own loss and, therefore, of the defendant's responsibility to them, and the evidence in regard to the records being undisputed, there was no error in an instruction that they had no bearing upon the case.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 358 January Term 1890, Sup. Ct.; court below, No. 58 December Term 1888, C. P.

On November 8, 1888, William A. Shaffer and Levi R. Shaffer brought trespass against John J. Corson, filing a statement of claim as follows:

"William A. Shaffer and Levi R. Shaffer, the above named plaintiffs, come here into court, and by Larzelere & Gibson, their attorneys, file this the statement of their demand against John J. Corson, the above named defendant:

"They claim to recover the sum of one thousand eight hundred and sixty-six and $\frac{31}{100}$ dollars ($1,866.31) which by the negligent and tortious act of said defendant said plaintiffs were wrongfully compelled to pay, being damages suffered by said plaintiffs by the wrongful act of defendant, under the following circumstances: The said defendant was employed by the said

plaintiffs to pay to one Enoch Shoemaker a mortgage debt owed by plaintiffs to said Shoemaker, and to have the same satisfied of record, lawful money for that purpose in sufficient amount being placed in the defendant's hands for their account; said mortgage being recorded in the office of the recorder of deeds for Montgomery county in Mortgage Book No. 146, page 53, securing the sum of $1,600 with interest, etc., according to the terms thereof; but said defendant tortiously and wrongfully neglected to pay the same to the said Enoch Shoemaker, and to have the record thereof marked satisfied, whereby the real estate of plaintiffs remained charged with said mortgage, and they have since by adversary process been compelled to pay the same, with interest and costs to a large amount; and, notwithstanding his said neglect, said defendant has also neglected and refused to pay over said sum of money to plaintiffs and to account to them therefor. By which wrongful and tortious trespass of the defendant, plaintiffs have suffered damage to the amount of $1,866.31; wherefore they bring this suit."

The defendant pleaded, not guilty.

At the trial on October 16, 1889, it was made to appear that in July, 1886, the plaintiffs' property being encumbered by a mortgage for $1,600, formerly held by Jacob M. Cowden, but assigned by him to one Enoch Shoemaker, and by two judgments, one for $500 and the other for $570, still held by Jacob M. Cowden, they went to John J. Corson, the defendant, to obtain for them a loan of $3,000 to be secured by a first mortgage, the proceeds to be used in discharge of the existing encumbrances; that Corson held some money for investment belonging to one Jeans, and he and Jeans being satisfied with the security he agreed to make the loan; that defendant drew certain deeds to perfect the title offered by the plaintiffs, made searches, and prepared the mortgage, which was executed by the plaintiffs on July 20, 1886, and recorded the same day; that on July 21st, the defendant paid the amount due on the Shoemaker mortgage to Jacob M. Cowden, who assumed to represent Shoemaker, taking his receipt therefor in full, signed "J. M. Cowden, for Enoch Shoemaker," Cowden, at the same time receiving and receipting for the amounts due on his own two judgments; that on July 22d, the defendant settled with the plaintiffs, paying them the balance of the loan less the sums

paid out by him, and $21 for his services; that Cowden failed
to pay over the money he obtained for Shoemaker, and died in-
solvent on April, 1887; that, in 1888, Shoemaker died, and
soon thereafter judgment was entered on the bond accompany-
ing the mortgage and execution issued; that William A. Shaf-
fer presented his petition in behalf of himself and Levi R.
Shaffer, averring that on July 21, 1886, the petitioners had
paid the principal and interest, due on the Shoemaker mort-
gage, to Jacob M. Cowden, who assumed to act as agent of
said Shoemaker and agreed that said Shoemaker should and
would satisfy the same; and that the petitioners were advised
and expected to be able to prove that said Cowden was the
duly authorized agent of said Shoemaker, to take and receive
payment on obligations held by said Shoemaker; praying for a
rule to open the judgment on said mortgage bond, etc.; that a
rule granted upon said petition was subsequently discharged,
and the plaintiffs were obliged to pay the judgment. It was
also made to appear that, after the present suit was brought,
the plaintiffs herein joined in a bill in equity filed against the
heirs at law of Jacob M. Cowden, deceased, to charge certain
property and securities held by them with the payment of the
indebtedness of said deceased, the bill containing a provision
that the parties joined in the bill " without prejudice to their
respective rights to recover against other parties for mispay-
ment of funds to said J. M. Cowden, whereby a liability arose
on their part to the complainants, or to insist on the validity
of payments made by them to J. M. Cowden for other parties;
the claims here being made in relief of whoever shall ultimately
be determined, in the audit of his estate, to be entitled to the
amounts recovered." In this proceeding, $400 was recovered
by the plaintiffs. Other facts appear in the charge of the
court below.

At the close of the testimony, the court, WEAND, J., charged
the jury in part as follows:

The first question, therefore, that arises in this case is, was
the defendant the agent of the plaintiffs? Because, if he was
not their agent, he is not liable in this action. In order to as-
certain that fact, we must refer to the testimony bearing upon
that point. [It is claimed and testified to by the plaintiffs, that

they employed Mr. Corson as their agent, and that when doing so they told him that he was to see that the new mortgage was to be the first lien, and that the other liens then standing were to be paid off to the proper parties. If this is true, and if Mr. Corson accepted this employment, he was their agent.] [1] But he denies this, and says, that having money of Mr. Jeans, he merely offered to loan that to the Messrs. Shaffer, and that at no time was he their agent as contended for here. Is there any corroborating circumstance which throws light upon this question either way?

[It is contended by the plaintiffs that they paid Mr. Corson for his services, and that this fact would constitute him their agent. (It is not denied that he received money for his services, but it is claimed by him that this is the usual compensation paid to persons who secure a loan, and that even although he was the agent of Mr. Jeans, it was the duty of the Messrs. Shaffer, the borrowers, to pay him the usual amount for securing the loan.) [3] The Messrs. Shaffer have contended that this was not so, and there is nothing before the jury in the shape of positive testimony to explain whether the $21 that Mr. Corson retained was the usual commission for securing a loan and recording the papers and the writing of them, or whether it contained something additional for his services to them; and the jury, from the facts before them, must, in the best way they can, determine whether or not there was anything paid to Mr. Corson as an agent, so called, for the plaintiffs.] [2] Is there anything to corroborate the defendant? He says that Jacob M. Cowden was the agent of the plaintiffs; that Mr. Shaffer informed him that Mr. Cowden had been receiving the interest on this mortgage, and further, that when the papers were drawn, at the request of Mr. Shaffer they were sent to Mr. Cowden for inspection, in order that he might decide as to whether they were in proper form, and that having received them and examined them they were then returned to the office of Mr. Corson, and that Mr. Cowden appeared there with Mr. Shaffer during the settlement; that, when he was there, he and Mr. Shaffer made the calculations, so as to determine exactly what amount was due on the Shoemaker mortgage, as well as on the two judgments; that Mr. Cowden prepared a receipt in his own handwriting, showing that satisfaction was to be entered; and

Charge of Court below.

there is some further additional testimony, which you will re-collect, as to what Mr. Shaffer said in regard to Mr. Cowden's connection in this matter. From these surrounding facts and circumstances, and from the positive testimony in the case, can you gather whether Mr. Corson was or was not the agent of the plaintiffs? If he was not, that is the end of this case.

Secondly, if he was an agent, was he a paid agent or an un-paid agent? It is important to determine this point, because the degree of care required of an unpaid agent is not so great as that of a paid agent. [If he was an agent at all, it must be manifest from the testimony of the plaintiffs that it was because of the pay he received, and if you find, therefore, that in this $21 there was anything included for his services, over and above that which the borrower usually pays, then, of course, he was a paid agent].[4] Now, if he was a paid agent, what were his duties? I prefer to read the law to you upon that subject, so that I may not be misunderstood:

" The liability of paid agents is for want of diligence in the ordinary duty of a professional person of the kind in question, or, which is the same thing, for negligence in the ordinary course of the service; doing what ought not to be done or omitting what ought to be done, in the common routine of the profession. As to ordinary paid agents, the contract made, and the duty undertaken by them, is to give skill and diligence in the pro-fession or business undertaken; and to know the extent of this, reference must be had to the particular profession or business in hand, and the extent of labor and ability ordinarily under-stood to be required by it. Insufficiency of means or skill and want of diligence according to the ordinary demands of the business, render the party liable. Want of ordinary diligence, or, which is the same thing, ordinary negligence, is the language used by the cases in defining the liability of a paid agent; or, in short, a paid agent is liable if negligent, and not liable if not negligent."

[If, however, you shall find that even although not paid, he assumed to do this business for the plaintiffs, and undertook that this new mortgage should be a first lien, then we must in-quire as to what degree of care is required of him as an unpaid agent, and this is defined as follows:][5]

" In the case of an unpaid agent, they are liable only for gross

Charge of Court below.

negligence. The language of the books as to what constitutes gross negligence is sometimes loose and inaccurate, from the general manner in which propositions are stated. The true way of considering cases of this nature, is to consider whether the party has omitted that care which bailees without hire or mandatories of ordinary prudence usually take of property of this nature. If he has, then it constitutes a case of gross negligence. The question is, not whether he has omitted that care which very prudent persons usually take of their own property, for the omission of that would be but slight negligence; nor, whether he has omitted that care which prudent persons ordinarily take of their own property, for that would be but ordinary negligence; but whether there be a want of that care which men of common sense, however inattentive, usually take, or ought to be presumed to take of their own property, for that is gross negligence. The contract of agency without reward, is not merely for good faith, but for such care as persons of common prudence in their situation usually bestow on such property. If they omit such care it is gross negligence."

[If, therefore, you shall find that he was an agent, either paid or unpaid, was he guilty of negligence? If he, as their agent, undertook to pay off these claims, having a knowledge that the Shoemaker mortgage had been assigned from Cowden, it was his duty, having undertaken that employment, to see that the money was paid to the proper person. He had examined the records and he knew of this assignment, and therefore, unless there were some facts or circumstances which would excuse him, the payment to Mr. Cowden, unless he had the securities there, would be a mispayment.] [6]

But it is said by Mr. Corson, and this is the important part of this case, that he made this payment to Mr. Cowden by the direction and with the full knowledge and consent of Mr. Shaffer. Mr. Shaffer was informed that Mr. Shoemaker was the proper person to receive this money, and Mr. Corson, having the money of Mr. Jeans to invest, was bound to protect Mr. Jeans, and therefore it was his duty to demand that this money should be paid to the proper person, to wit, Mr. Shoemaker; and he testified that he made this point at that time, and declined to pay it to Mr. Cowden unless Mr. Shoemaker was produced; that he requested Mr. Shaffer to have Mr. Shoemaker brought

Charge of Court below.

to the office, but that Mr. Shaffer said that he had always transacted this business with Mr. Cowden and that the money should be paid to Mr. Cowden. If you believe this testimony, Mr. Corson was excused and was justified in making this payment. This is denied by Mr. Shaffer, and therefore the jury must from the facts and circumstances determine where the truth lies upon this important part of this case. Mr. Corson has produced here a receipt from Mr. Cowden, as the agent of Mr. Shoemaker, in which it is agreed that this satisfaction shall be made in thirty days. Does this corroborate him in his statement? Would he pay this money to Mr. Cowden under those circumstances without the order, direction or consent of Mr. Shaffer, when he must have known that if he did so and there was any loss, he would have to pay it out of his own pocket to his client Mr. Jeans? Even, therefore, if you consider that he was agent for both parties, here is an important element in this case to which the jury must give due weight, because it may corroborate the one side or the other.

In determining where the truth lies here, the jury must take into consideration the situation in which these parties were placed and the probabilities of their statements. Is it probable or reasonable to suppose that Mr. Corson, who made this point himself, would have deliberately paid over this money to Mr. Cowden without the consent of Mr. Shaffer, especially as he must have known that, if it was a mis-payment, he would be liable to Mr. Jeans? Is it probable or reasonable to suppose that Mr. Shaffer would have consented to such an arrangement when he was informed that Cowden was not the holder of the mortgage? It is said that he replied to that, " I have always transacted this business with Mr. Cowden. He has always received the interest from me; therefore I am willing that he shall receive the money." Therefore, if you believe that this money was thus paid to Cowden by the direction, or with the knowledge, or with the consent of Mr. Shaffer, Mr. Corson would not be liable in this action.

Then again, as bearing upon the question of negligence, it has been testified to here that Mr. Cowden at that time was regarded in the community as a man well to do, that he was accustomed to loaning money of his own and for other people, and that he was reputed to be wealthy. [With that knowledge

Charge of Court below.

in the minds of both parties, was it negligence on the part of
Mr. Corson to have assumed that Mr. Cowden would properly
appropriate this money? This is only important as bearing
upon the question whether he was guilty of that degree of
gross negligence in an unpaid agent which would render him
liable in this case, because if he was a paid agent it does not
make any difference what Mr. Cowden's reputation in the com-
munity was, because then it was Mr. Corson's duty to see that
the money went to the proper person,] [7] unless Mr. Shaffer di-
rected or consented that it should go otherwise.

[There have been offered in evidence here certain papers that
the court thinks have no bearing upon this case. It appears
that Mr. Shoemaker sued out this mortgage; and that, in order
to test their liability, the Messrs. Shaffer interposed an affida-
vit of defence in which they swore that they had paid this claim
by paying it to Mr. Cowden, who was entitled to receive it.
I charge you that that affidavit cannot affect the merits of this
case, because these parties had a perfect right to make that
affidavit, under the circumstances, in order to test their liabil-
ity, in order to see whether they were liable or not; and it may
be that it was their duty to do so in order to protect Mr. Cor-
son. It may be important to show in one respect that they had
paid it to Mr. Cowden, but the affidavit does not state whether
they paid it directly or through Mr. Corson, and, as I said be-
fore, I fail to see how it can have any bearing in this case.
There has also been offered in evidence a bill in equity filed by
the Messrs. Shaffer, with others, in reference to this very money.
That was another legal proceeding which these parties had a
perfect right to resort to, because, if this was a mispayment, no
matter whose fault it was they had a right to ask Mr. Cowden
or his estate to return the money if he had misappropriated it,
and whether they resorted to one or half a dozen remedies
would not prevent their recovery in this case, if you shall find
that Mr. Corson was liable.] [8]

The true question after all, in this case, is, was Mr. Corson
the agent of these parties; and if he was, was he guilty of neg-
ligence? And if you find he was the agent and was guilty of
negligence, he is liable. But if you find that, whether agent
or not, he paid this money to Mr. Cowden by the direction or
with the consent of the Messrs. Shaffer, that is an end of this

case, and your verdict should be for the defendant. If you find
for the plaintiffs you will give them damages to the extent of
$1,468.30, with interest from the 7th day of November, 1888.

The jury returned a verdict for the plaintiff for $1,551.
Thereupon, the defendant filed a motion for a new trial and
in arrest of judgment, alleging as reasons: That the plaintiffs'
declaration showed no cause of action to warrant a recovery;
that the action was in trespass, and the declaration showed
only a breach of contract, etc. On March 3, 1890, the motions
were overruled, the rule discharged, and judgment entered on
the verdict; thereupon, the defendant took this appeal, speci-
fying that the court erred:

1–8. In the portions of the charge embraced in [ ] ¹ ᵗᵒ ⁸
10. In overruling the motion in arrest of judgment.

*Mr. B. E. Chain*, for the appellant.

As to the ratification of unauthorized acts, counsel cited:
Story on Agency, 239, 250, 255; Wright v. Burbank, 64 Pa.
247; Farmers' Trust Co. v. Walworth, 1 N. Y. 434; Drakely
v. Gregg, 8 Wall. 267; Hawley v. Keeler, 53 N. Y. 120;
Keeler v. Salisbury, 33 N. Y. 653; Sanger v. Wood, 3 Johns.
Ch. 418. That the judgment should have been arrested: 1
Chitty Pl., 136; Fritz v. Hathaway, 135 Pa. 274; Reeside v.
Reeside, 49 Pa. 332; Zell v. Arnold, 2 P. & W. 295; Mc-
Cahan v. Hirst, 7 W. 179; Cook v. Haggerty, 2 Gr. 257; Mc-
Call v. Forsyth, 4 W. & S. 180.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the
appellees.

Counsel cited: Act of May 25, 1887, P. L. 271; Murdoch
v. Martin, 132 Pa. 86; Wingate v. Mechanics' Bank, 10 Pa.
108; Wilson v. Wilson, 26 Pa. 394; McFarland v. McClees,
17 W. N. 547.

OPINION, MR. JUSTICE MITCHELL:

The motion in arrest of judgment seems to have been found-
ed mainly on the claim that while the action was in trespass,
the statement set forth merely a breach of contract, and did
not aver that defendant was the plaintiff's agent. But this

Opinion of the Court.

view cannot be sustained. The statement does not use the word agent, but it does aver an agency when it sets forth the employment of defendant by the plaintiffs. It then proceeds to state the facts that defendant had in his hands sufficient funds for the agreed purpose, and his negligent failure to pay them over. Then follows the averment of the consequent damage to plaintiffs by having to pay the Shoemaker mortgage over again. The statement contains all the essential elements of a declaration for negligence and leaves the defendant in no doubt as to just what is claimed of him, and why. It is in fact a rather favorable specimen of pleading, under an act which enjoins disregard of form and invites looseness.

Apart from this, there is nothing in the case but a question of fact. It was the unfortunate case of defendant's confidence in a man of good reputation assuming to be the agent of another, and payment to him when in fact he had no authority to receive the money. There were two grounds of defence; the absence of any employment or duty on the part of the defendant to the plaintiffs, and express direction by them to pay the money to Cowden. On both these questions, there was conflicting evidence and the learned judge left them to the jury with clear and emphatic instruction that if they found either one in favor of defendant he was not liable. The judge then discussed the case on the alternative view that the jury might find the agency and not find any express direction to pay to Cowden, and explained the negligence which would make the defendant liable, either as a paid or a voluntary agent, under the circumstances, including in the latter the general reputation of Cowden in the community at that time, as a man of honesty and business credit. Of the instructions on the subject of negligence the defendant, at least, has no just ground of complaint.

Nor was there any error in the treatment of the documents referred to in the eighth assignment. The affidavit to open the Shoemaker judgment was based on the information and averment that Cowden had paid the money over to Shoemaker. If that was true it was a good defence, whether Cowden had been authorized to receive the money or not. As the learned judge said in his charge, the affidavit does not state whether the plaintiffs paid to Cowden in person or through defendant

Syllabus.

as their agent, and certainly contains no admission of either authorization or ratification of defendant's action, as between him and them. So with the bill in equity against Cowden's representatives. It was filed after this suit was commenced, and with the express reservation that it was to be without prejudice to rights against other parties, meaning the defendant, for mis-payments to Cowden. In fact, both the effort to open the Shoemaker judgment and the bill against Cowden were efforts in relief of the loss, and therefore of defendant's responsibility, and as the evidence in regard to them was undisputed, the judge was right in instructing the jury definitely as to their weight in the cause.

It is no doubt, as the learned court below said, a hard case for either party to have to bear the loss; but the jury have put it upon the defendant, and there was no error in the way the question was submitted to them.

Judgment affirmed.

